IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| WILLIAM MCDANIEL and ALEXIS MCDANIEL, <br><br> Plaintiffs, <br><br> v. <br><br> CENTRAL OREGON & PACIFIC RAILROAD, INC., et al., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) NO. 1:18-cv-00067 <br> ) <br> ) JUDGE CAMPBELL <br> ) MAGISTRATE JUDGE FRENSLEY <br> ) <br> ) <br> ) |

## **MEMORANDUM**

Pending before the Court is Defendant Commercial Services Group, Inc.'s Motion for Summary Judgment (Doc. No. 24). Plaintiffs filed a Response in Opposition (Doc. No. 35), and Defendant filed a Reply (Doc. No. 37). For the reasons discussed below, Defendant's Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part.

### I.  FACTUAL AND PROCEDURAL BACKGROUND

In February of 2015, Plaintiff William McDaniel accepted a job with Central Oregon & Pacific Railroad Inc. (Doc. No. 1). In connection with accepting that job, Plaintiff signed a Relocation Repayment Agreement ("the Agreement") which provided for a forgivable loan in the amount of Plaintiff's relocation expenses. (*Id.* at ¶ 8; Doc. No. 1-1, PageID #12). The Agreement also provided that if Plaintiff voluntarily terminated his employment for any reason or was dismissed by Central Oregon & Pacific Railroad Inc for just cause, that Plaintiff would have to repay all or a portion of the loan based on the repayment schedule. (Doc. No. 1-1, PageID #12; Doc. No. 34 ¶ 3).

On or about March 30, 2016, Plaintiff submitted a resignation letter to his supervisor at Central Oregon & Pacific Railroad Inc. (*See* Doc. No. 34 ¶ 4; Doc. No. 1 ¶ 9). Following Plaintiff's resignation, Central Oregon & Pacific Railroad Inc. demanded repayment of the monies and sued Plaintiff to recover the same. (Doc. No. 1 ¶ 10). While that action was pending, Central Oregon & Pacific Railroad Inc. engaged Defendant Commercial Services Group Inc. ("CSG"), to collect the disputed debt from Plaintiff. (*Id*. at ¶ 11). Plaintiffs allege CSG called Plaintiff William McDaniel on his cellular phone without permission approximately 10 times and called Plaintiff Alexis McDaniel on her cellular phone without permission approximately 15 times. (*Id*. at ¶¶ 35, 37). Plaintiffs further allege CSG uses an automatic telephone dialing system. (*Id*. at ¶ 34).

Plaintiffs filed this action on September 5, 2018, alleging, in pertinent part, that Defendant CSG violated provisions of the Fair Debt Collection Practices Act ("FDCPA") 15 U.S.C. § 1692 *et seq.* and the Telephone Consumer Protection Act ("TCPA") 47 U.S.C. § 227 *et seq*.

## II.     STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks,* 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id.*

In evaluating a motion for summary judgment, the court views the facts in the light most favorable for the nonmoving party, and draws all reasonable inferences in favor of the nonmoving

party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper jury question. *Id.* The mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence of which the jury could reasonably find for the nonmoving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

### III.  ANALYSIS

**A.  Fair Debt Collection Practices Act**

Defendant argues it is entitled to summary judgment on Plaintiffs' FDCPA claims because the subject debt is a business debt rather than a consumer debt, and therefore not subject to the FDCPA. (Doc. No. 24 at 1; Doc. No. 25 at 10). The FDCPA defines a "debt" as:

> … any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

15 U.S.C. § 1692a(5). When determining whether a debt is regulated by the FDCPA – i.e., whether a debt is for "personal, family, or household purposes" – the Court must focus on the purpose for which the debt was incurred. *See id.*; *see also Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC*, 698 F.3d 290, 294 (6th Cir. 2012). This determination looks at the time the obligation was undertaken, not when a debt collector attempts to collect the debt. *Id.* at 293.

Defendant argues the subject debt is a business debt because it asserts that Plaintiff incurred the debt for the purpose of accepting a job offer from Central Oregon & Pacific Railroad Inc. (Doc.

3

No. 24 at 2; Doc. No. 25 at 2, 9-10; Doc. No. 37 at 2-3). Defendant contends the job offer from Central Oregon & Pacific Railroad Inc. was a "business opportunity" and that Plaintiff's acceptance of that offer of employment was a "business decision." (*See id.*). In support of its position, Defendant points to evidence that the job offer from Central Oregon & Pacific Railroad Inc. was conditioned on Plaintiff's execution of the Relocation Reimbursement Agreement. (Doc. No. 25 at 10 and Doc. No. 37 at 2 (citing Doc. No. 1-2 at 1)). Defendant also relies on *In re Cherrett*, 873 F.3d 1060 (9th Cir. 2017) for the proposition that Plaintiff incurred the subject debt to further his career.

In Response, Plaintiffs argue the subject debt is a consumer debt, and therefore subject to the FDCPA, because the debt was incurred for the purpose of feeding, moving, and relocating Plaintiffs' family. (Doc. No. 35 at 4-5). In support of their position, Plaintiffs point to evidence that the relocation funds were used for travel expenses, meals, and temporary lodging during their move. (Doc. No. 27-1 at PageID # 161-162).

Viewing the evidence and drawing all reasonable inferences in the light most favorable to Plaintiffs, the Court finds genuine issues of material fact exist as to whether the subject debt was incurred "primarily for personal, family, or household purposes." *See* 15 U.S.C. § 1692a(5). Accordingly, Defendant's Motion for Summary Judgment on this ground is **DENIED**.

**B.     Telephone Consumer Protection Act**

Defendant argues it is entitled to summary judgment on Plaintiffs' TCPA claims because it did not use an automatic dialing system to place telephone calls to Plaintiffs. (Doc. No. 25 at 2-3, 10-14). In their Response, Plaintiffs argue summary judgment is not appropriate because Defendant's dialer is capable of auto dialing without human intervention. (Doc. No. 35 at 7).

The TCPA regulates the use of certain technology when placing calls to consumers. *See Baisden v. Credit Adjustments, Inc.*, 813 F.3d 338, 341–42 (6th Cir. 2016). It makes it unlawful for any person to place a call "using any automatic telephone dialing system or an artificial or prerecorded voice" to a cell phone number without obtaining the "prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A)(iii). Thus, to state a claim under the TCPA for calls made to a cellular phone, a plaintiff must establish that: (1) a call was placed to a cell or wireless phone, (2) by the use of any automatic dialing system and/or leaving an artificial or prerecorded message, and (3) without prior consent of the recipient. 47 U.S.C. § 227(b)(1)(A); *see e.g.*, *Brown v. Hosto & Buchan, PLLC*, 748 F. Supp. 2d 847, 859 (W.D. Tenn. 2010). Under the Act, an automatic telephone dialing system is defined as equipment with the "capacity" (1) to store or produce telephone numbers to be called, using a random or sequential number generator, and (2) to dial such numbers. 47 U.S.C. § 227(a)(1).

Defendant asserts that it did not use an automatic dialing system to place telephone calls to Plaintiffs, (Doc. No. 25 at 2-3, 10-14), and presents the affidavit of its Collections Manager and records custodian, Sonya Smothers, (Doc. No. 27), print outs of its file log for Plaintiffs' file (Doc. No 27-3), and a redacted file log for one of its collection files from 2011/2012 where dialing technology was utilized to contact the individual (Doc. No. 27-4). According to Ms. Smothers, Defendant's file for the Plaintiffs was assigned to a collector named Wayne Pineda, and Mr. Pineda was listed on Defendant's file log for Plaintiffs' file by his initials "WAP". (Doc. No. 27 ¶¶ 10, 12). Ms. Smothers states that for a collector's initials to appear in a file log, the collector had to manually log into the software Defendant used to track activity on each its files with their own unique password. (*Id.* at ¶¶ 7, 11). Ms. Smothers further states that Mr. Pineda manually dialed the calls made to Plaintiffs using the telephone numbers provided by Central Oregon & Pacific

Railroad Inc. (*Id*. at ¶¶ 12, 24 (citing Doc. No 27-3 at 3-9)). Additionally, Ms. Smothers states that dialer calls were not placed where a collector was assigned and that Defendant only used dialer campaigns for small balance accounts, typically under $1,000. (Doc. No. 27 ¶¶ 14-15). When a dialer was utilized, the column designated for initials in the file log reflected "ADM" for administrative and the call information. (*Id*. at ¶ 16 (citing Doc. No 27-4)). According to Ms. Smothers, no call Defendant placed to either Plaintiff was made using any type of dialer. (Doc. No. 27 ¶ 24). Defendant argues the foregoing evidence demonstrates that one of its employees, Wayne Pineda, manually dialed all the phone calls placed to Plaintiffs' cell phones. (*See* Doc. No. 27 at 10-14; Doc. No. 37 at 3-4).

In Response, Plaintiffs filed a joint affidavit stating that Defendant contacted them on their cell phones "on what [Plaintiffs] believe to be an auto dialing system…" (Doc. No. 35-1 at ¶ 2). Plaintiffs also produce an archived instruction handout entitled "Dialer Strategy and Setup",[1] (*see* Doc. No. 35-4), arguing the handout is evidence that Defendant's dialer is capable of being used without human intervention. (Doc. No. 35 at 7). Plaintiffs rely on *Ammons v. Ally Fin., Inc.*, 326 F. Supp. 3d 578 (M.D. Tenn. 2018) for the proposition that a system may qualify as an automatic telephone dialing system by simply having the capacity to dial numbers without human intervention. (*See* Doc. No. 35 at 7). However, the court in *Ammons* only reached the issue of whether the defendant's dialer qualified as an automatic telephone dialing system within the

---

[1] Plaintiffs also point to discovery responses where Defendant stated that it came under new ownership on December 31, 2016 and that its new ownership did not retain documentation or information regarding training it provided or received in the area of debt collection activities; that Mr. Pineda was a former employee under former ownership and Defendant had no information regarding Mr. Pineda; and that Defendant's phone calls with Plaintiffs were recorded but the recordings were not in Defendant's possession, custody, or control. (Doc. No. 35 at 7 (citing Doc. No. 35-3)). Plaintiffs do not cite these discovery responses in their responses to Defendant's statement of undisputed material facts, (*see* Doc. No. 34), or articulate any argument in their Response as to how these discovery responses support their position against summary judgment.

meaning of the Act because the parties had entered into a stipulation that the telephone calls made by the defendant to the plaintiff were "placed both manually and using a dialer. For only those telephone calls made using a dialer, the equipment ha[d] the capacity to operate as a predictive dialer." *Ammons*, 326 F. Supp. 3d at 584 (noting that with "[t]his essential fact being undisputed, the pending motions debate whether Ally's predictive dialer qualifies as an ATDS within the meaning of § 227(a)(1).").

Here, Defendant has produced evidence that all the calls it made to Plaintiffs' cellphones were dialed manually by one of its employees and that no calls were placed to either of the Plaintiffs using any type of dialer. (*See* Doc. Nos. 27; 27-3). While Plaintiffs' affidavit states that they "believe" Defendant used an auto dialing system to call their cellphones, the affidavit fails to provide any factual basis for this belief. (*See* Doc. No. 35-1). As Defendant correctly points out, without more this statement is simply a restatement of the allegations in Plaintiffs' Complaint. (Doc. No. 37 at 4).

The Court finds there is no genuine issue of material fact as to whether Defendant placed calls to Plaintiffs' cellphones using any automatic telephone dialing system. Even viewing the evidence and drawing all reasonable inferences in the light most favorable to Plaintiffs, the evidence in the record does not support Plaintiffs' allegations that Defendant called their cellphones using an automatic telephone dialing system. Accordingly, the Court **GRANTS** summary judgment to Defendant as to Plaintiffs' TCPA claims.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE